# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAKE FORD, INC.,

                    Plaintiff,

v.                                                      Case No. 24-CV-1643-JPS

FORD MOTOR COMPANY,

                    Defendant.                          **ORDER**

## 1.    INTRODUCTION

In this matter, pending since December 2024, ECF No. 1, Plaintiff Lake Ford, Inc. ("Lake"), a dealer and servicer of Defendant Ford Motor Company's ("Ford") vehicles, sues Ford under Wisconsin law for denying its requests for reimbursement for service and repairs at Lake's requested rate. *See generally* ECF No. 17. Now before the Court is Lake's motion to compel Ford to respond to its discovery requests related to other Ford dealers' reimbursement rates. ECF Nos. 22, 23. The motion is fully briefed. ECF Nos. 23, 26, 27. For the reasons stated herein, Lake's motion will be denied.

## 2.    BACKGROUND

Lake sells and services Ford vehicles in the state of Wisconsin. ECF No. 17 at 3. Lake and Ford have a franchise relationship governed by the provisions of the Wisconsin Motor Vehicle Dealer Law. *Id.* (citing WIS. STAT. §§ 218.0101–218.0163). "Lake's franchise includes the right . . . to provide service and repairs of Ford vehicles as required by Ford's warranty and be compensated by Ford for the labor and parts used in providing such service

and repairs"—in other words, to be paid for its labor servicing or repairing vehicles still under Ford's manufacturer warranty. ECF No. 23 at 1; *see also* ECF No. 17 at 3. Lake made two requests for such compensation to Ford based on its "effective nonwarranty labor rate in accordance with Wis. Stat. § 218.0125," (a "Labor Rate Request"). ECF No. 17 at 1; *id.* at 3–7.[1] Specifically, in June 2024 and March 2025, Lake submitted Labor Rate Requests to Ford, asserting effective nonwarranty labor rates of $277.70 and $316.58 per hour, respectively. *Id.* at 4, 6.

Under Wisconsin Statutes § 318.0125(3m)(a), Ford must "reasonably compensate" Lake for service and repairs that Lake performs on under-warranty vehicles. "Reasonable compensation . . . is equal to [Lake's] effective nonwarranty labor rate multiplied by the number of hours allowed for the repair under [Ford's] . . . time allowances used in compensating [Lake] for the warranty work." WIS. STAT. § 218.0125(3m)(b). Ford's "effective nonwarranty labor rate" is calculated using a formula based on repair orders that Lake submits to Ford and Ford's time allowances for service. *Id.* § 218.0125(3m)(c)1.

"A repair order is a record that a dealer keeps of service or repair work performed on a vehicle." ECF No. 26 at 2 (quoting ECF No. 26-1 at 2). Lake may submit to Ford either 100 sequential repair orders for qualifying nonwarranty repairs or all repair orders for qualifying nonwarranty repairs

---

[1] Lake raises two other counts in its operative complaint: one related to Ford's alleged "underpayment" for services under Ford's Remote Experience Program and one related to Ford's alleged failure to compensate Lake for replacement electric vehicle batteries. ECF No. 17 at 8–12. However, Lake's motion to compel pertains only to count one in its complaint, which alleges that Ford failed to reimburse Lake for warranty service and repairs at the rate that Lake requested.

performed in a 90-day period, whichever is less. WIS. STAT. § 218.0125(4m)(a)2. Ford's "'time allowances' are pre-defined amounts of time that [it] uses to help standardize warranty reimbursements to dealers." ECF No. 26 at 3 (citing ECF No. 26-1 at 3).

Lake's effective nonwarranty labor rate is thus determined using the submitted repair orders "by dividing the total customer labor charges for qualifying nonwarranty repairs[2] in the repair orders by the total number of hours that would be allowed for the repairs if the repairs were made under [Ford's] . . . time allowances used in compensating the dealer for warranty work." WIS. STAT. § 218.0125(3m)(c)1.

When Ford receives a dealer's Labor Rate Request, it "reviews the dealer's repair orders and the applicable sections of [its Service Labor Time Standards or] SLTS to determine the relevant time allowances. ECF No. 26 at 4 (citing ECF No. 26-1 at 3). It "does not review or consider documents submitted by other Ford dealers in determining a dealer's effective non-warranty labor rate." *Id.* (citing same).

Lake states that it followed the above-described statutory formula to arrive at the $277.70 and $316.58 hourly effective nonwarranty labor rates that it requested from Ford in June 2024 and March 2025. ECF No. 17 at 3–7. However, Ford did not reimburse Lake at these rates. Rather, Ford "adjust[ed] . . . Lake's calculations" and "commenced paying Lake at [an] effective nonwarranty labor rate of $234.72 per hour" with respect to Lake's June 2024 request and a rate of $231.86 per hour with respect for Lake's March 2025 request. *Id.* at 5, 7; *see also* ECF No. 27 at 2–3 (citing ECF No. 29-

---

[2] "Qualifying nonwarranty repairs" are "nonwarranty repairs that would be covered by the warranty of a manufacturer . . . if the vehicle being repaired was covered by the warranty." WIS. STAT. § 218.0125(1)(b).

Case 2:24-cv-01643-JPS    Filed 10/03/25    Page 3 of 11    Document 30

1, Ford's response to Lake's March 2025 Labor Rate Request, and noting that "the spreadsheet . . . contains labor time added by Ford to repairs performed by Lake" and that "[b]y adding labor operations to repair orders listed in the rate request, Ford reduces the amount of the . . . labor rate"). Lake alleges that Ford, by failing to pay Lake at its requested effective nonwarranty labor rates, violated its responsibility to pay Lake a reasonable rate as defined in Wisconsin Statutes § 218.0125(3m) and (4m). ECF No. 17 at 6–7; *see also* WIS. STAT. § 218.0116(1)(km) (providing right of action against a "manufacturer . . . who violates . . . [§] 218.0125").

During this litigation, Lake issued to Ford two Requests for Production that are now at issue. ECF No. 23 at 4–5. Those requests and Ford's responses are as follows:

> **REQUEST NO. 16.** Documents sufficient to show the number of labor rate requests pursuant to Wis. Stat. § 218.0125(4m)(a) submitted by Wisconsin Ford dealers since January 1, 2023.

> **RESPONSE:** Ford objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking irrelevant information as other Wisconsin Ford dealers' labor rate requests are not at issue in this action and because the number of requests statewide have no bearing on what Lake's warranty reimbursement rate is under Wisconsin law.

> **REQUEST NO. 18.** Documents sufficient to show Ford's responses to labor rate requests pursuant to Wis. Stat. § 218.0125(4m)(a) submitted by Wisconsin Ford dealers since January 1, 2023.

> **RESPONSE:** Ford objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking irrelevant information as Ford's responses to other Wisconsin Ford dealers' labor rate requests are not at issue in this action and because the number of requests

> statewide have no bearing on what Lake's warranty
> reimbursement rate is under Wisconsin law.

*Id.* (reproducing ECF No. 24-1 at 9–10). Lake submits a six-page spreadsheet that it avers "is the type of information requested by Request No. 18" from other Ford dealers because it "contains the basis for Ford's calculation of the warranty rate it has approved." *Id.* at 5 (citing ECF No. 24-2). Lake subsequently "narrowed Request No. 18 to only include Ford's responses to [Labor] [R]ate [R]equests submitted by other Wisconsin dealers . . . for the period January 1, 2024 to present." *Id.* at 5 (citing ECF No. 24-3 at 3).

## 3. LEGAL STANDARD

The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Despite the liberal breadth of discovery allowed under Rule 26 of the Federal Rules of Civil Procedure, a proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021) (citing *West v. Miller*, No. 05C4977, 2006 WL 2349988 (N.D. Ill. Aug. 11, 2006) and *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993)). Once that initial burden is met, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citing *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)); *see also Vander Pas v. Bd. of Regents of the Univ. of Wis. Sys.*, 664 F. Supp. 3d 893, 909 (E.D. Wis. 2023) (citing *Sandoval v. Bridge Terminal Trans., Inc.*, No. 14-C-639, 2015 WL 3650644, at *1 (E.D. Wis. June 10, 2015)).

"Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) . . . empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(2)). "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Id.* (quoting *Rowlin v. Alabama*, 200 F.R.D. 459, 461 (M.D. Ala. 2001), Fed. R. Civ. P. 26 advisory committee notes, and 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2008.1 (1994)).

"District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001) and *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

4.  **ANALYSIS**

Lake argues that the information it seeks in its Requests for Production 16 and 18—"[t]he rate requests of other Wisconsin dealers"—is relevant as to how Ford analyzes Labor Rate Requests and "whether Ford analyzes them in a fair, reasonable[,] and consistent manner." ECF No. 23 at 5. "If Ford does not analyze [Labor Rate Requests] in a fair, reasonable, and consistent manner," Lake argues, "dealers are . . . subject to arbitrary and unreasonable findings by Ford" on Labor Rate Requests. *Id.*

Ford argues that Lake's requests seek information that is not relevant to this lawsuit because (1) "the legal issues in [this case] are limited to

[Ford's] interaction with [Lake]" and therefore "evidence of [Ford's] interaction with potentially similarly situated third parties" is irrelevant and (2) "Wisconsin law does not require manufacturers to evaluate Labor Rate Requests in a 'fair, reasonable, and consistent manner,'" only whether they are "reasonable" under the formula outlined in Wisconsin Statutes § 218.0125(3m) and (4m). ECF No. 26 at 5–10.

Lake replies by arguing that if "Ford [has] added time to the [Labor] [R]ate [R]equests of other Wisconsin dealers" as it allegedly did to Lake's requests, and did so "in an opportunistic and indiscriminate manner that serves only to drive down warranty labor rates, then Lake and other Ford dealers are not being reasonably compensated." ECF No. 27 at 4.

Ford's arguments are more compelling. To begin, Lake has not alleged in its operative complaint that other dealerships received better warranty compensation rates from Ford, that Ford has a pattern of arbitrarily evaluating different dealers' Labor Rate Requests, or that Lake was the victim of such discrimination or pattern. *See* ECF No. 17 at 3–7. Based solely on Lake's framing of the case, the information it seeks to compel is of questionable relevance. *See Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992) (The fact that the [plaintiff company] may, as the [defendant franchisees] argue, have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket.").

Lake readily admits that it is not pursuing a "discrimination, conspiracy[,] or fraud" claim, but nonetheless insists that if Ford is evaluating Lake and other dealers' Labor Rate Requests disparately (e.g., by applying inconsistent manufacturer's time allowances or modifying

labor time), the compensation that Lake receives cannot be reasonable under the applicable Wisconsin statute. ECF No. 27 at 5.

Neither party has provided any case law or other authority (such as administrative agency rulings or advisory opinions) interpreting the phrase "reasonably compensate" in Wisconsin Statutes § 218.0125(3m)(a). The Court located only one case referencing this specific phrase, in which now-Chief Judge Pamela Pepper noted that she "d[id] not have to resort to a dictionary to find out what 'reasonably compensate' means [because] the statute defines the phrase" and provides a formula for the effective nonwarranty labor rate. *Don Johnson Hayward Motors, Inc. v. Gen. Motors LLC*, No. 16-CV-1350-PP, 2018 WL 4568822, at *6 (E.D. Wis. Sept. 24, 2018) (citing WIS. STAT. § 218.0125(3m), (3m)(b), and (3m)(c)(1) and (2)). However, in that case, Chief Judge Pepper was not addressing arguments like Lake raises here concerning whether one dealer's compensation for warranty repairs is unreasonable under Wisconsin law if it is inconsistent with the rates that other dealers receive or is based on different inputs.

Ford argues that there is no support for Lake's preferred reading of the statute because "[t]he Wisconsin legislature chose to make certain causes of action under [the Wisconsin Motor Vehicle Dealer Law] contingent on the manufacturer's treatment of other dealers," but did not do so in the statute at issue here. ECF No. 26 at 9. This argument is persuasive. In drafting Wisconsin Statutes § 218.0125, the Wisconsin legislature defined a formula for determining reasonable compensation to dealers, and that formula does not include any reference to other dealers or their Labor Rate Requests, the manufacturer's response thereto, or any component thereof. But it opted to include such references to other dealers in other parts of the statutory scheme. *See, e.g.*, WIS. STAT. § 218.0116(1)(i)

(proscribing manufacturers from cancelling a dealer's franchise "without due regard to the equities," defining "due regard to the equities as "treatment . . . that is not discriminatory compared to similarly situated dealers"); *id*. § 218.0125(5) (noting that manufacturers who "fail[] to compensate a dealer for parts at an amount not less than the amount the dealer charges its other retail service customers" has not violated the law "if the manufacturer . . . shows that . . . the amount is not reasonably competitive to the amounts charged to retail service customers by other similarly situated . . . dealers in this state. . . for the same parts").

Reading Wisconsin Statutes § 218.0125 *in pari materia* and applying the canon of statutory construction of *expressio unius et exclusion alterius*, the Court does not believe that the Wisconsin legislature intended for reasonable compensation under this statute to take into account what a manufacturer has paid other dealers, or that Wisconsin courts interpreting the phrase would so conclude. *See James v. Heinrich*, 960 N.W.2d 350, ¶¶ 18–19 (Wis. 2021) (discussing these statutory interpretation doctrines and collecting authority); *but see Ralph Gentile Inc. v. State, Div. of Hearings and Appeals*, 800 N.W.2d 555, ¶ 25 (Wis. Ct. App. 2011) ("It may be, in light of the legislature's use of the phrase 'in this state' in WIS. STAT. § 218.0125(5) but not in WIS. STAT. § 218.0116(1)(i)1.a, that the legislature meant to encompass out-of-state dealers in the due-regard-to-the-equities analysis. But our review, as we have already seen, is not *de novo;* under the applicable due-weight-deference standard of review, we must affirm the Division's interpretation of § 218.0116(1)(i)1a if it is 'reasonable.' . . . [T]he Division's restriction of the 'similarly situated' [in § 218.0116(1)(i)1a] mandate to Wisconsin dealers is reasonable . . . .").

The statute under which Lake sues Ford does not provide a basis for considering other dealers' effective nonwarranty labor rates in a Labor Rate Request, so the information is not relevant to Lake's claim. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery regarding matter "that is relevant to any party's claim or defense"). Even more broadly construing the test for relevancy as permitting "discovery of any matter relevant to the subject matter involved in the action for good cause," *id.*, 2000 Amendment committee notes, the Court would not find Lake's requested information relevant, as Lake is not prosecuting a claim of being treated differently or worse than other dealers, which is what the requested information would show. Moreover, Lake has not adequately explained why the discovery that Ford *has* produced—particularly, the spreadsheet showing Ford's adjustments to Lake's requested effective nonwarranty labor rate, ECF No. 29-1—is inadequate to show whether Ford's time allowances, the denominator of the reasonable compensation equation, were inappropriate. This is, perhaps, terrain for an expert witness to explore.

Because Lake has failed to meet its burden establishing the relevance of the information it seeks, *PsyBio Therapeutics*, 2021 WL 4459527, at *1, the Court will deny Lake's motion to compel. Because the Court decides the motion on relevancy grounds alone, the Court will not address the parties' arguments as to whether the requested discovery is proportionate to the needs of the case or unduly burdensome. ECF No. 26 at 10–13; ECF No. 27 at 5–6.

**5.      CONCLUSION**

For the reasons stated above, the Court will deny Lake's motion to compel. Neither party has requested its costs or attorneys' fees, *see* Fed. R. Civ. P. 37(a)(5)(B), so the Court will not address this issue.

Accordingly,

**IT IS ORDERED** that Plaintiff Lake Ford, Inc.'s motion to compel, ECF No. 22, be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 3rd day of October, 2025.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge